USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9-17-20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOR

UNITED STATES OF AMERICA

v.

LAEL YOUNG,

Defendant.

20-CR-391 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

The Clerk of Court is respectfully directed to file the Center for Community Alternatives' brief (attached here) on the docket for the above-referenced matter.

SO ORDERED.

Dated: September 18, 2020
New York, New York

RONNIE ABRAMS
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

**v.**

**LAEL YOUNG,**

**Defendant.**

Case No. 20-CR-00391 (RA)

BRIEF OF *AMICUS CURIAE* CENTER FOR COMMUNITY ALTERNATIVES

**BRIEF OF *AMICUS CURIAE***
**CENTER FOR COMMUNITY ALTERNATIVES**

Brian A. Jacobs
Morvillo Abramowitz
Grand Iason & Anello P.C.
565 Fifth Avenue, 10th Fl.
New York, NY 10017
(212) 856-9600

## TABLE OF CONTENTS

PRELIMINARY STATEMENT....1

INTEREST OF AMICUS CURIAE....2

ARGUMENT....4

I. The routine granting of protective orders covering police records undermines recently enacted New York State laws increasing the public availability of police records....4

A. New York recently enacted laws combatting police misconduct by increasing the public availability of police records....5

B. If the government amasses a thicket of protective orders like the one requested here, those orders will undercut New York's recent police accountability reforms....7

CONCLUSION....11

# TABLE OF AUTHORITIES

Pages

**Statutes**

N.Y. Exec. Law § 70-b (McKinney) ........................................................... 6
N.Y. Exec. Law § 234 (McKinney)............................................................ 6
N.Y. Judiciary Law § 212 (McKinney) ....................................................... 7
N.Y. Pub. Off. Law § 86 (McKinney)................................................... 5, 11
Section 50-a of the New York Civil Rights Law............................................ 1, 2, 5

**Rules**

Fed. R. Crim. Pro. 49.1.......................................................10
N.Y. St. R.P.C. Rule
4.4.........................................................................10
Model Rules of Prof'l Conduct
R. 1.3......................................................................10
S.D.N.Y. Local Crim. Rule 23.1...............................................10

**Sessions Law**

N.Y. Legis. 96 (2020), 2020 Sess. Law News of N.Y. Ch. 96 (S. 8496)
..............................................................................5

**Legislation**

N.Y. Senate-Assembly Bill S3398, A1685, 243rd N.Y. Leg.
Sess.........................................................................5
N.Y. Senate-Assembly Bill S4214, A2671, 243rd N.Y. Leg.
Sess.........................................................................5
N.Y. Senate Bill S4215, 243rd N.Y. Leg.
Sess.........................................................................5
N.Y. Senate-Assembly Bill S8493, A8647-A, 243rd N.Y. Leg.
Sess.........................................................................6
N.Y. Senate-Assembly Bill S2574-C, A10609-C, 243rd N.Y. Leg.
Sess.........................................................................6
N.Y. Senate-Assembly Bill S1830, A10609, 243rd N.Y. Leg.
Sess.........................................................................6

**Other Authorities**

August 13, 2020, Motion for a Protective Order (Docket No. 15) .....................1

Erin Durkin, *Dozens of Groups Push City and State to Publish Correction Officer Disciplinary Records*, Politico (Aug. 27, 2020) https://tinyurl.com/y2nltnsz..........3

Justice Roadmap (Feb. 3, 2020) https://tinyurl.com/y5v53c8g..........3

September 8, 2020, Letter Request for Protective Order (Docket No. 21)…………...3

Stephen Maugeri, *Bail and Discovery Reform Rollbacks Take Effect*, *Advocates Concerned About Changes*, CBS News 6 (July 2, 2020) https://cbs6albany.com/news/local/bail-and-discovery-reform-rollbacks-take-effect-advocates-concerned-about-changes..........4

N.Y. Assembly, Floor Debate, 198, 243rd N.Y. Leg., Reg. Sess., (June 9, 2020), https://tinyurl.com/y4z8jhom..........6

*United States v. Fowlkes*, 20 Cr. 00309 (AJN), Aug. 19, 2020, Transcript…………...10

*United States v. Hoskins*, No. 20 Cr. 399 (PGG), Aug. 28, 2020, Transcript…………...10

## PRELIMINARY STATEMENT

In response to the recent public outcry over the killing of George Floyd, the New York State Legislature repealed section 50-a of the New York Civil Rights Law ("50-a"), which had previously shielded certain records of police misconduct from public scrutiny.[1] In the present case, however, the government has now twice asked this Court to enter a protective order that would shield from the public various law enforcement records, some of which may well be the sorts of records that the repeal of section 50-a, as well as other recent legislative reforms, were meant to bring to light. *See* September 8, 2020, Letter Request for Protective Order (Docket No. 21) ("Gov't Letter"); *see* August 13, 2020, Motion for a Protective Order (Docket No. 15) ("Gov't Mot.").

In justifying its request for a protective order, the government has asserted that the public dissemination of certain discovery materials "*might* adversely affect law enforcement interests," Gov't Letter at 2 (emphasis added), and that this is "not a complex" criminal case, Gov't Mot. at 4. But those justifications will exist in many routine cases, and if courts in this District begin routinely granting such threadbare applications for protective orders that make police records confidential,

[1] The defendant consents to the filing of this brief; the government objects. No counsel for a party authored this brief in whole or in part. No person or entity other than the amicus curiae and its counsel made a monetary contribution to the preparation and submission of this brief.

those orders could effectively negate in significant part recent legislative efforts to expose records of police misconduct to public scrutiny.

The Center for Community Alternatives ("CCA"), which played a central role in advocating for the repeal of section 50-a as well as other recent reforms, respectfully submits this amicus brief to describe its recent advocacy efforts and how the routine granting of protective orders such as the one the government has requested in this case undermines those efforts.

**INTEREST OF AMICUS CURIAE**

Founded in 1981, the CCA is a leader in the field of community-based alternatives to incarceration. Its mission is to promote reintegrative justice and a reduced reliance on incarceration through advocacy, direct service and public policy in pursuit of civil and human rights. CCA provides an array of alternatives to incarceration including gender-specific and age-specific treatment programs as well as sentence mitigation and court advocacy services. CCA helps men and women released from jail and prison secure employment and stable housing. Young people impacted by the criminal legal system also have the opportunity to participate in constructive community programs, finish their schooling and remain in their communities. CCA serves over 2,500 New Yorkers annually in New York City, Rochester and Syracuse. In addition to direct services, CCA addresses the

inadequacies of the criminal legal system through advocacy and public policy initiatives.

CCA is interested in this case because it is concerned that the routine granting of protective orders covering police records will undermine its recent advocacy efforts (which were met with legislative success) aimed at making records of police misconduct and abusive police tactics more available to the public. As a partner in the organization of Communities United for Police Reform, CCA was integrally involved in the advocating for the recent passage of legislation to repeal 50-a, which previously shielded police misconduct records from public view.

As part of this effort, CCA played a coordinating role in developing a slate of legislative priorities to hold abusive police accountable known as "the Justice Roadmap." *See* Justice Roadmap (Feb. 3, 2020) https://tinyurl.com/y5v53c8g. Following the repeal of 50-a, CCA organized open letters to New York Governor Cuomo and New York City Mayor de Blasio calling for the creation of a public database of correction officer misconduct records. *See* Erin Durkin, *Dozens of Groups Push City and State to Publish Correction Officer Disciplinary Records*, Politico (Aug. 27, 2020) https://tinyurl.com/y2nltnsz. Over the past few years, CCA has also successfully advocated for pretrial reform legislation, including pretrial discovery reform and bail reform legislation. *See* Stephen Maugeri, *Bail*

*and Discovery Reform Rollbacks Take Effect, Advocates Concerned About Changes*, CBS News 6 (July 2, 2020) https://cbs6albany.com/news/local/bail-and-discovery-reform-rollbacks-take-effect-advocates-concerned-about-changes. CCA offers this amicus brief in an effort to highlight its advocacy work and the degree to which the routine issuance of protective orders like the one the government requested here blunt the effectiveness of those efforts.

## ARGUMENT

### I. The routine granting of protective orders covering police records undermines recently enacted New York State laws increasing the public availability of police records.

The government's request for a protective order that would keep police records confidential comes against the backdrop of a burst of activity in the New York State Legislature this past summer aimed at achieving exactly the opposite: bringing into public view police records that may contain evidence of misconduct and abusive police tactics. If the government is able to obtain protective orders on a routine basis that keep police records confidential based on nothing more than bare references to a potential adverse impact on law enforcement interests, the combined impact of those orders will hollow out the Legislature's careful efforts to combat harmful police practices through increased transparency.

### A. New York recently enacted laws combatting police misconduct by increasing the public availability of police records.

In response to mass protests in the wake of the killing of George Floyd in late May this year, the New York State Legislature passed into law a sweeping set of reforms intended to enhance police accountability and transparency. The centerpiece of these legislative reforms was the complete repeal of section 50-a of the New York Civil Rights Law, which had long worked to keep hidden records of police misconduct. N.Y. Legis. 96 (2020), 2020 Sess. Law News of N.Y. Ch. 96 (S. 8496). The Legislature replaced 50-a with provisions that permit the public to access New York Police Department disciplinary records, including any "complaints, allegations, and charges against" officers, through the state's Freedom of Information Laws (FOIL). N.Y. Pub. Off. Law § 86(6)(a) (McKinney).

In adopting these reforms, the Legislature enhanced, to a significant extent, public access to police records that may contain evidence of misconduct. For example, the Legislature rejected multiple alternative proposals that would have merely narrowed the scope of 50-a without fully repealing it. *See, e.g.*, N.Y. Senate-Assembly Bill S4214, A2671, 243rd N.Y. Leg. Sess. (authorizing members of a civilian review board to petition a court for the release of police misconduct records); N.Y. Senate Bill S4215, 243rd N.Y. Leg. Sess. (narrowing the definition of the sort of records covered by 50-a); N.Y. Senate-Assembly Bill S3398, A1685,

243rd N.Y. Leg. Sess. (same). Moreover, in enacting the complete repeal of 50-a, multiple legislators made clear that they intended for *all* records—including unsubstantiated allegations of misconduct—to be made available to the public. *See, e.g.*, N.Y. Assembly, Floor Debate, 198, 243rd N.Y. Leg., Reg. Sess., (June 9, 2020), https://tinyurl.com/y4z8jhom (Assemblymember Bichotte stating, "I'm happy to know that unsubstantiated [allegations] will be also open to the public."). The repeal of 50-a was accompanied by other transparency and accountability reforms. For example, the Legislature passed a new law requiring all state police officers to wear body cameras that would record their interactions with the public, including "all arrests and summonses," "all searches of persons and property," and "investigative actions where there are interactions with members of the public." N.Y. Exec. Law § 234(2)(c), (e), (g) (McKinney); N.Y. Senate-Assembly Bill S8493, A8647-A, 243rd N.Y. Leg. Sess. The Legislature further created a special prosecutor to investigate instances where police kill individuals in New York state, *see* N.Y. Exec. Law § 70-b (McKinney); N.Y. Senate-Assembly Bill S2574-C, A10609-C, 243rd N.Y. Leg. Sess., and enacted a new law requiring the recording and reporting of demographic and geographic data related to policing, *see* N.Y. Judiciary Law § 212(2)(v-1) (McKinney); N.Y. Senate-Assembly Bill S1830, A10609, 243rd N.Y. Leg. Sess.

Taken together, these new laws represent a decisive effort to hold abusive police accountable by increasing public transparency over police records and police tactics. The success of this effort is diminished by the type of protective order at issue here.

**B. If the government amasses a thicket of protective orders like the one requested here, those orders will undercut New York's recent police accountability reforms.**

The government requests a protective order that prevents defense counsel from sharing with any third party, including other attorneys, any "internal law enforcement reports" and "NYPD reports" turned over in discovery. Gov't Letter at 1; *see also* September 8, 2020, Government's Proposed Protective Order, Docket No. 21-1 (permitting disclosure of these documents only to witnesses, defense counsel's associates or employees "*solely* for purposes of defending this action" (emphasis added)). This broad language could capture anything from disciplinary records, which bear directly upon police misconduct, to lab reports and probation forms, which may shed light on whether the police are adhering to rules and policies governing the treatment of evidence in a criminal investigation. Thus, to the extent this protective order covers records that contain evidence of either police misconduct or harmful police practices, the government's proposed protective order is at cross-purposes with the Legislature's recent transparency laws. If, as the government has suggested it intends, applications for similar

protective orders become a routine matter, the combined impact of broadly worded protective orders like this one would be to vitiate New York's decision to increase transparency and accountability for abusive policing.

The government's letters in support of its request for a protective order here offer little to distinguish this case from many others. The government instead concedes that "this is not a complex case." *See* Gov't Mot. at 4. And, even on its second motion (including an amended proposed order), the government does not identify (nor offer to do so *ex parte*) any particularly sensitive investigative techniques or ongoing criminal investigations that make this case different from many others. Gov't Letter 1–2. Rather, to support its contention that "law enforcement interests" "might" be at stake, the government points simply to the generalized risk of publicly disclosing "non-public documents" that "may reveal the sources and methods law enforcement officers have used (and will continue to use) to investigate criminal conduct, supervise probationers, question defendants, and evaluate defendants before sentencing." *Id.* at 2.

This case is one of several in which the government has recently made similar requests for protective orders governing police records. For example, in one case, the government explained to Judge Nathan that the government had recently decided to "prioritize [its] review of when a protective order might be appropriate" and to "more aggressively" seek protective orders over police records

and other discovery documents where needed. *United States v. Fowlkes*, 20 Cr. 00309 (AJN), Aug. 19, 2020, Tr. at 9:13–19. In another, roughly two weeks ago, after reviewing a request for a broad protective order similar in scope to the one the government previously sought here, Judge Gardephe noted that "[t]hese requests for blanket protective orders are different than what I've seen before." *United States v. Hoskins*, No. 20 Cr. 399 (PGG), Aug. 28, 2020, Tr. at 5:21–6:3.

If this Court grants the protective order the government has requested here, without any further showing by the government regarding why the "law enforcement reports" at issue must be kept confidential, the Court's order will serve as a precedent that will be cited by the government, and, if widely followed, will do lasting damage to the New York State Legislature's thoughtful effort to ensure public access to police records. For example, if this Court grants the order, even if the police reports in this case (or another case governed by a similar order) contain evidence of abusive police tactics or other misconduct, the government's proposed protective order could prohibit defense counsel from providing that information to other attorneys. Government's Proposed Protective Order at 3 (permitting disclosure "solely for purposes of defending this action" to witnesses, individuals retained by defense counsel, and defense counsel's employees). Or, if

the police reports at issue contain evidence relating to the credibility of an officer, the government's protective order could prohibit defense counsel from sharing that information with another attorney representing a client who may be imprisoned based on that same officer's in-court testimony. *Id*. That result is directly contrary to the Legislature's efforts to increase public scrutiny of abusive policing tactics and ensure accountability for police misconduct.

To the extent the government is concerned with how defense counsel might treat discovery, it bears noting that all attorneys are bound by New York State Rules of Professional Conduct and Local Rules that prohibit the improper use of discovery materials in the public sphere. *See* N.Y. St. R.P.C. Rule 4.4 ("[A] lawyer shall not use means that have no substantial purpose other than to embarrass or harm a third person or use methods of obtaining evidence that violate the legal rights of such a person"); S.D.N.Y. Local Criminal Rule 23.1(a) (prohibiting disseminating non-public discovery documents "if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice"); *see also* Fed. R. Crim. Pro. 49.1 (requiring counsel to redact personal identifying information from court filings).

It is true that even if this Court approves a protective order that covers evidence of police misconduct, thanks to the repeal of 50-a, members of the public

may still be able to request the police disciplinary records under New York's FOIL. N.Y. Pub. Off. Law § 86(6)(a). However, it is simply nonsensical, if the very same records are available to the public through a FOIL request, that defense counsel would be precluded from sharing discovery with those same members of the public. Moreover, some of the people best positioned to discover misconduct or abusive police tactics are defense attorneys, who are ethically obligated to conduct a careful review of discovery records. *See* Model Rules of Prof'l Conduct R. 1.3 (Diligence). Protective orders such as the one the government requests here could not only prevent attorneys who discover abusive police tactics or misconduct in the course of their work from disclosing that fact to others, but could also bar them from even telling members of the public which records to request under FOIL. The recent legislative reforms aimed at increasing transparency in law enforcement would be undermined by the routine granting of protective orders such as the one sought by the government in this case.

## CONCLUSION

For the foregoing reasons, CCA respectfully requests that the Court deny the government's present application for a protective order in this case in consideration

of the need for public scrutiny of records of police misconduct and abusive police practices.

Dated: New York, New York
September 14, 2020

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By: _____/s/ Brian A. Jacobs____________
Brian A. Jacobs
565 Fifth Ave
New York, New York 10017
Tel.: (212) 856-9600
bjacobs@maglaw.com
*Counsel for the Center for Community Alternatives*