UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

LAEL YOUNG,

Defendant.

No. 20-cr-391 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Having pled guilty to possession of ammunition following a felony conviction in violation of 18 U.S.C. § 922(g)(1), Defendant Lael Young now moves to vacate his guilty plea and dismiss the indictment, arguing that § 922(g)(1) is unconstitutional as applied to him under the Second Amendment. For the reasons that follow, Young's motion is denied.

## BACKGROUND

On July 30, 2020, Young was indicted for possession of ammunition following a felony conviction in violation of § 922(g)(1). *See* Indictment, Dkt. 11. Young has two prior felony convictions: on December 4, 2018, Young was convicted of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.39, and Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law § 265.02. *See* Defendant's Motion to Vacate his Guilty Plea and Dismiss the Indictment ("Def. Mot."), Dkt. 79 at 1; Memorandum of Law in Opposition to Defendant's Motion to Vacate his Guilty Plea and Dismiss the Indictment ("Gov't Opp."), Dkt. 82 at 3. On February 11, 2020, Young knowingly possessed nine 9-milimeter bullets inside of his bedroom. *See* Plea Hearing Transcript ("Plea Tr."), Dkt. 71 at 20. He also knew that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year. *Id.*

On January 19, 2023, Young pled guilty to the indictment, *see id.* at 19–20, and the Court accepted his plea on May 22, 2023, *see* Dkt. 76. On September 11, 2023, Young moved to vacate his guilty plea and dismiss the indictment. *See* Def. Mot. at 1. The Government submitted a response on October 12, 2023, *see* Gov't Opp. at 1, and the Court held oral argument on January 24, 2024, *see* Dkt. 88.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 11(d)(2), a defendant may withdraw a guilty plea before the court imposes a sentence if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A guilty plea "is a grave and solemn act" that is "not to be entered into or withdrawn lightly." *United States v. Boamah*, 2017 WL 2799164, at *4 (S.D.N.Y. June 26, 2017).[1] "Society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas undermines confidence in the integrity of our judicial procedures." *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989).

The defendant has the burden of demonstrating valid grounds for the withdrawal of his plea. *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016). "[T]o determine whether the defendant has shown a 'fair and just reason' to justify withdrawal, a district court considers, *inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion . . . ; and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004). This standard is "stringent." *Id.* at 103.

---

[1] Unless otherwise noted, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

**DISCUSSION**

Young argues that he is entitled to withdraw his guilty plea and have his indictment dismissed because § 922(g)(1) is unconstitutional as applied to him. Relying on the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), Young claims that the Second Amendment protects his conduct. In asking the Court to vacate his plea, Young does not dispute the facts underlying his plea. *See* Def. Mot. at 11 ("Mr. Young admits—as he did at his plea colloquy—that he possessed nine 9-milimeter bullets in a storage container in his home on February 11, 2020."). Rather, Young argues that he is legally innocent in light of *Bruen*.

At the outset, Young's delay in bringing this motion weighs against withdrawal. *See Schmidt*, 373 F.3d at 102 ("[T]he longer the elapsed time, the less likely withdrawal would be fair and just."). Young moved to withdraw his plea eight months after he pled guilty, and "[c]ourts in this Circuit have held that delays of periods of time much shorter than [four months] weigh against motions to withdraw." *See United States v. Thomas*, 651 F. Supp. 3d 685, 693 (S.D.N.Y. 2023) (collecting cases). Although Young argues that his delay is excusable because of a shifting legal landscape, Def. Mot at 11, *Bruen* was decided more than six months before he pled guilty and fourteen months before he moved to withdraw the plea.[2] Young's delay thus "suggests strongly that [he] knew that *Bruen* did not render Section 922(g) unconstitutional as applied to him." *See*

---

[2] In support of his argument that his delay is excusable, Young points to *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc) and *United States v. Bullock*, 679 F. Supp. 3d 501 (S.D. Miss. 2023), both of which were decided after his plea. Young's reliance on these cases is misplaced, however, given that neither is binding within this Circuit and both contradict clear Second Circuit precedent. *See United States v. Rampersant*, 2023 WL 8430564, at *3 (E.D.N.Y. Dec. 5, 2023) (finding reliance on *Range* and *Bullock* unpersuasive because "[n]either decision binds this Court, and both contradict the Second Circuit's decision in *Bogle*, which *does* bind this Court" (emphasis in original)). Moreover, several courts within the Second Circuit have expressly rejected requests to follow *Range*. *See, e.g.*, *United States v. Sternquist*, 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023) (finding *Range* to be "a decision that: (1) is not binding in this Circuit; (2) is an outlier amongst courts across the country analyzing post-*Bruen* constitutional challenges to § 922(g)(1); and (3) most importantly, was limited in precedential value by the *Range* Court itself to the specific and unusual facts of that case"); *United States v. Nelson*, 2023 WL 6520378, at *3 (S.D.N.Y. Oct. 4, 2023) (finding that *Range* "is neither persuasive nor controlling, and is inconsistent with [Second Circuit precedent]"); *cf. Range*, 69 F.4th at 106 ("Our decision today is a narrow one.").

*United States v. Nelson*, 2023 WL 6520378, at *1 (S.D.N.Y. Oct. 4, 2023) (noting that "*Bruen* was issued eight months before [the defendant's] guilty plea and about fourteen months before his motion"); *see also United States v. Rampersant*, 2023 WL 8430564, at *3 (E.D.N.Y. Dec. 5, 2023) (holding that the defendant "cannot rely on *Bruen* to excuse his delay in bringing his motion" because *Bruen* "was available to him for the entire period between his guilty plea and motion to withdraw, yet he did not raise it as a reason to dismiss the Indictment against him for nearly fourteen months").

In any event, Young does not dispute the conduct underlying his plea, but instead asserts that he is legally innocent on the basis that § 922(g)(1) is unconstitutional as applied to him. The Second Circuit, however, has already upheld the constitutionality of § 922(g)(1). Accordingly, there is no reason to dismiss the indictment, nor any fair and just reason to justify the withdrawal of his plea. The Court thus denies Young's motion.

Although the Second Amendment protects "an individual right to keep and bear arms for self-defense," *Bruen*, 597 U.S. at 17, this right "is not unlimited," *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. To regulate protected conduct, the Government must then show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.*

In *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam), the Second Circuit held "that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *Bogle*, 717 F.3d at 281–82. In so holding, the Second Circuit relied on the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *See Bogle*, 717 F.3d at 281. In *Heller*, although the Supreme Court held that the District of Columbia's ban on handgun possession in the home violated the Second

Amendment, *Heller*, 554 U.S. at 635, the Court made clear that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," *id.* at 626; *see also id.* at 627 n.26 (characterizing prohibitions on the possession of firearms by felons as a "presumptively lawful regulatory measure[]"). That assurance was repeated in *McDonald*. *See McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . . We repeat those assurances here.").

Published decisions by the Second Circuit are generally binding on future panels and district courts within the Circuit "unless they are reversed *en banc* or by the Supreme Court," or if there is a "conflict, incompatibility, or inconsistency between this Circuit's precedent and [an] intervening Supreme Court decision." *United States v. Afriyie*, 27 F.4th 161, 168 (2d Cir. 2022). *Bogle*, however, has not been reversed, and the Court finds no conflict, incompatibility, or inconsistency between *Bogle* and *Bruen*. Indeed, there is nothing in *Bruen* that suggests that *Heller* or *McDonald*—the cases upon which *Bogle* relies—are no longer good law. To the contrary, *Bruen* reaffirmed *Heller* and *McDonald*. *See, e.g.*, *Bruen*, 597 U.S. at 10 (noting that its holding is "consistent with *Heller* and *McDonald*"); *id.* at 26 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."); *id.* at 27 ("Following the course charted by *Heller*, we will consider whether historical precedent from before, during, and even after the founding evinces a comparable tradition of regulation."); *cf. United States v. Hampton*, 676 F. Supp. 3d 283, 299 (S.D.N.Y. 2023) ("*Bruen* reaffirms the holdings of *Heller* and *McDonald*."). And even though the majority opinion in *Bruen* did not directly discuss felon-in-possession laws, it repeatedly framed its discussion on Second Amendment protections as applying to "law-abiding" citizens. *See, e.g.*, *Bruen*, 597 U.S. at 8–9 ("[T]he Second and Fourteenth Amendments

5

protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."); *id.* at 15 ("[P]etitioners . . . are law-abiding, adult citizens."); *id.* at 26 ("The Second Amendment is the very product of an interest balancing by the people and it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense."); *id.* at 29 ("[W]e do think that *Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense."); *id.* at 38 n.9 ("[N]othing in our analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes," which "often require applicants to undergo a background check or pass a firearms safety course" and "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens.").

Indeed, three of the Justices who joined the majority opinion in *Bruen* separately emphasized that it did not disturb *Heller* and *McDonald*'s assurances as to the permissibility of felon-in-possession laws. Justice Alito, for example, explained that the majority opinion had not "disturbed anything that [the Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 72 (Alito, J., concurring). Likewise, Justice Kavanaugh, in a concurring opinion joined by Chief Justice Roberts, explained that "the Second Amendment allows a variety of gun regulations," such as prohibitions on the possession of firearms by felons. *Id.* at 80–81 (Kavanaugh, J., joined by Roberts, C.J., concurring). Additionally, the three dissenting Justices also noted that they understood the majority opinion "to cast no doubt on . . . *Heller*'s holding" that felon-in-possession laws are "presumptively lawful." *Id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

Moreover, in *United States v. Rahimi*, No. 22-915 (U.S. June 21, 2024), the Supreme Court recently upheld the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order meets

certain statutory criteria. *See Rahimi*, slip op. at 16 ("Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."). In so holding, the Court relied on both *Heller* and *Bruen*, *see id.*, slip op. at 6–8, and it noted *Heller*'s "state[ment] that many . . . prohibitions, like those on the possession of firearms by felons and the mentally ill, are presumptively lawful," *id.*, slip op. at 15; *see also id.*, slip op. at 14 ("[W]e do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." (citing *Heller*, 554 U.S. at 626)); *cf. id.*, slip op. at 22–23 (Kavanaugh, J., concurring) (noting that *Heller* "recognized a few categories of traditional exceptions to the [Second Amendment] right," such as that "longstanding prohibitions on the possession of firearms by felons . . . are presumptively constitutional").

Given that *Heller* and *McDonald* still apply "in full force" after *Bruen* and *Rahimi*, "*Bogle* remains binding precedent within this Circuit on the constitutionality of section 922(g)." *See Hampton*, 676 F. Supp. 3d at 301. Indeed, several courts within this Circuit have held that they are bound by *Bogle* even after *Bruen*, thus finding § 922(g)(1) to be constitutional. *See, e.g.*, *United States v. Barnes*, 2023 WL 2268129, at *2 (S.D.N.Y. Feb. 28, 2023) ("Because *Bruen* did not disturb either [*Heller* or *McDonald*], the Second Circuit's holding in *Bogle* continues to govern this issue."); *United States v. Garlick*, 2023 WL 2575664, at *5 (S.D.N.Y. Mar. 20, 2023) ("*Bruen* does not alter the holding of *Bogle*: Section 922(g) is a constitutional regulation of the possession of firearms."); *United States v. Davila*, 688 F. Supp. 3d 81, 84 (S.D.N.Y. 2023) ("*Bogle*'s holding . . . remains binding on this Court."); *United States v. Gomez*, 2024 WL 1704970, at *3 (S.D.N.Y. Apr. 18, 2024) (holding that *Bogle* remains binding precedent).

Young urges the Court to independently determine the constitutionality of § 922(g)(1) by assessing whether the conduct that led to his prior felony convictions would have resulted in a ban

7

on possessing firearms in 1791. *Bogle*, however, has already upheld the constitutionality of § 922(g)(1), and "there is nothing in *Heller*, *McDonald*, or *Bogle* to suggest that the validity of a restriction on a felon possessing a firearm turns on the severity of the felony that triggers the restriction." *Nelson*, 2023 WL 6520378, at *3; *see also United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (rejecting an as-applied challenge to § 922(g)(1) and holding that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"). The same is true of *Rahimi*. Nor has Young provided any "binding precedent to show that § 922(g)(1) is amenable to as-applied challenges." *See United States v. Crawford*, 2024 WL 1657879, at *5 (S.D.N.Y. Apr. 17, 2024).

Under § 922(g)(1), it is "unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce[] any firearm or ammunition." 18 U.S.C. § 922(g). Young's "prior felony convictions, which are punishable by a term of imprisonment exceeding one year, place him squarely within § 922(g)(1)." *See United States v. Craft*, 2023 WL 6215326, at *3 (S.D.N.Y. Sept. 25, 2023); *see also United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022) (holding that the "[d]efendant's as-applied challenge . . . has no merit" because his felony convictions "fall squarely within 18 U.S.C. Section 922(g)(1)"); *United States v. Bell*, 2024 WL 1020962, at *2 (S.D.N.Y. Mar. 8, 2024) (rejecting an as-applied challenge where the defendant's "prior felony convictions . . . f[ell] squarely within Section 922(g)(1)"). The Court thus rejects Young's as-applied challenge.[3]

---

[3] Young also argues that his prior conviction for criminal possession of a weapon cannot support disarmament because New York's licensing scheme was struck down under *Bruen*. Def. Mot. at 8. The Court need not consider this argument, given that Young's conviction for criminal sale of a controlled substance places him within § 922(g)(1) as well. *See Nelson*, 2023 WL 6520378, at *3 n.3 (finding that "it is unnecessary to consider [the defendant's] conviction [for possessing a gun without a license] in view of the defendant's subsequent two felony convictions").

Given that § 922(g)(1) is constitutional, and that Young does not dispute that he engaged in conduct violating that statute, the Court denies his motion to withdraw his guilty plea and dismiss the indictment.

## CONCLUSION

For the foregoing reasons, Young's motion to withdraw his guilty plea and dismiss the indictment is denied. Young's sentencing is hereby scheduled for July 25, 2024 at 11:00 a.m. If that date or time is inconvenient for either party, they shall so notify the Court. To the extent Young seeks to submit any supplemental sentencing submissions, he shall do so no later than two weeks prior to sentencing. The Government's submission shall be due one week prior to sentencing.

SO ORDERED.

Dated:   June 25, 2024
         New York, New York

Ronnie Abrams
United States District Judge